## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 17-cv-61086-BLOOM/Valle

SPIRIT AIRLINES, INC.,

      Plaintiff,

v.

STEVEN MAIZES, et al.,

      Defendants.

_____/

## ORDER

**THIS CAUSE** is before the Court upon Plaintiff Spirit Airlines, Inc.'s ("Plaintiff" or "Spirit Airlines") Motion for Preliminary Injunction to Stay Class Arbitration Proceedings, ECF No. [8] ("Motion for Preliminary Injunction"), and Defendants Steven Maizes, Vincent Anzalone, Lee Traylor, and Howard Madenberg's (collectively, "Defendants") Motion to Dismiss Complaint, ECF No. [25] ("Motion to Dismiss"). The Court had the benefit of oral argument on the Motions at a hearing held on August 11, 2017. The Court has considered the oral arguments made at that hearing, has reviewed the Motions, all opposing and supporting submissions, the record and the applicable law, and is otherwise fully advised. For the reasons set forth below, Spirit Airlines' Motion for Preliminary Injunction is denied and Defendants' Motion to Dismiss is granted.

## I.  BACKGROUND

On April 12, 2017, Defendants filed an arbitration claim against Spirit Airlines with the American Arbitration Association ("AAA") in Broward County, Florida, purporting to represent a class of consumers who paid a fee to join Spirit Airlines' "$9 Fare Club." ECF No. [1] at ¶ 11.

The $9 Fare Club is a discount program allowing Spirit Airlines passengers to pay a fee for access to reduced air fares and other discounted items. *See* ECF No. [8] at 4. In the arbitration action, which is currently pending, Defendants—each of whom enrolled in the $9 Fare Club— allege misrepresentations in the "$9 Fare Club Terms and Conditions" (the "Agreement") that is posted on Spirit Airlines' website. *See* ECF No. [1] at ¶¶ 12-13. Of import here, the Agreement contains an arbitration clause, which states as follows:

> This Agreement and the terms of membership shall be governed and construed in accordance with the laws of the State of Florida without giving effect to the choice of law provisions thereof. *Any dispute arising between Members and Spirit will be resolved by submission to arbitration in Broward County, State of Florida in accordance with the rules of the American Arbitration Association then in effect.* Notwithstanding the foregoing, nothing in this Agreement is intended or shall be construed to negate or otherwise affect the consumer protection laws of the state in which Members reside.

ECF No. [1-2] at ¶ 9.5 (emphasis added). Defendants relied on the Agreement's arbitration clause in filing their putative class arbitration claim with the AAA. *See* ECF No. [1-1] at ¶ 11.

On May 30, 2017, Spirit Airlines initiated this action by filing a Complaint against Defendants seeking injunctive and declaratory relief—namely, a stay of the arbitration action and a declaration that (i) the Agreement's arbitration clause does not authorize class action arbitration claims against Spirit Airlines, and (ii) the arbitration action is preempted by federal law. ECF No. [1] at ¶ 1. Shortly thereafter, on June 16, 2017, Spirit Airlines filed its Motion for Preliminary Injunction, urging the Court to enter an order enjoining Defendants from: "(i) petitioning an arbitrator to rule on whether their claims are subject to class arbitration, or (ii) proceeding with their putative class arbitration, until [the] Court decides whether claims arising from the $9 Fare Club Agreement are subject to class arbitration." ECF No. [8] at 3. On July 17, 2017, Defendants filed their Motion to Dismiss, arguing that the Court should dismiss Spirit

Airlines' Complaint for lack of subject matter jurisdiction pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"), and Federal Rule of Civil Procedure 12(b)(1).

In essence, the parties are at odds on two issues. First, as a threshold matter, whether the arbitrator or the Court decides if arbitration may proceed on a class basis. And second, whether the parties agreed to class arbitration by way of the Agreement's arbitration clause. With respect to the threshold issue, Spirit Airlines argues that the Court, not the arbitrator, should decide whether the parties agreed to arbitrate on a class basis. *See* ECF No. [8] at 5-15; ECF No. [39]. As to the second issue, Spirit Airlines argues that the Agreement's arbitration clause covers bilateral claims only—i.e., Spirit Airlines "did not agree to class arbitration . . . ." ECF No. [8] at 1. Defendants respond that, through the Agreement's incorporation of the AAA Rules, the parties agreed to allow the arbitrator ("not a judge") to decide all issues of arbitrability, including whether the parties agreed to submit to class arbitration. ECF No. [25] at 3-4. Defendants also argue that the Agreement explicitly provides for arbitration over class or collective claims in that the Agreement's arbitration clause is made applicable to any dispute arising between "Members and Spirit," rather than, for example, any dispute "arising between any 'Member' and Spirit, or between 'You' and Spirit." *Id.* at 2-3. As such, regarding the threshold inquiry, the Court must first address who the ultimate decision maker is, which requires an examination of the Agreement to determine whether the parties agreed to submit the class arbitrability issue to the arbitrator. If such an agreement was reached, this federal court action can proceed no further.

## II.    DISCUSSION

The FAA, which applies to contracts that evidence transactions involving interstate commerce, provides that contractual arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any

contract." 9 U.S.C. § 2. The FAA's "primary" purpose is to ensure that "private agreements to arbitrate are enforced according to their terms." *Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). With respect to class arbitration, "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010).

As the Fifth Circuit has explained, "[p]reliminary issues in arbitration cases include gateway disputes, which typically require judicial determination, and procedural questions, which are to be reviewed by the arbitrator." *Robinson v. J & K Administrative Management Services, Inc.*, 817 F.3d 193, 195 (5th Cir. 2016) (citing *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 451-53 (2003) (plurality opinion)). "The arbitrability of disputes—in other words, the determination of whether the agreement applies to the parties' claims—is generally a gateway issue to be determined by the courts." *Id.* (citing *AT & T Technologies, Inc. v. Comm'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). "'[W]hether the parties have a valid arbitration agreement at all or *whether a concededly binding arbitration clause applies to a certain type of controversy*' are two examples of questions of arbitrability." *Fed. Nat'l Mortg. Ass'n v. Prowant*, 209 F. Supp. 3d 1295, 1309 (N.D. Ga. 2016) (quoting *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003)) (emphasis added) (alteration in original). "And if there is doubt about [whether the arbitrator should decide a certain issue,] we should resolve that doubt 'in favor of arbitration.'" *Bazzle*, 539 U.S. at 452 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985)).

By way of background, in *Bazzle*, the Supreme Court addressed whether the underlying question before it—namely, whether the governing contracts forbade class arbitration—was a

substantive gateway issue for a judge to decide or a procedural issue for the arbitrator to decide. A plurality of the Court found that it was procedural, characterizing the "relevant question [as] what *kind of arbitration proceeding* the parties agreed to[,]" and reasoning that the question "concerns contract interpretation and arbitration procedures." *Bazzle*, 539 U.S. at 452-53 (citations omitted) (emphasis in original). The *Bazzle* plurality went on to explain: "Arbitrators are well situated to answer that question. Given these considerations, along with the arbitration contracts' sweeping language concerning the scope of the questions committed to arbitration, this matter of contract interpretation should be for the arbitrator, not the courts, to decide." *Id.* at 453.

Importantly, however, the Supreme Court has since explained that the *Bazzle* plurality decision did not definitively decide the issue. *See, e.g.*, *Oxford Health Plans LLC v. Sutter*, — U.S. —, 133 S. Ct. 2064, 2068 n. 2 (2013) ("*Stolt-Nielsen* made clear that this Court has not yet decided whether the availability of class arbitration is a question of arbitrability. . . . But this case gives us no opportunity to do so . . . .") (internal citation omitted). Likewise, the Eleventh Circuit has yet to decide the issue directly. *See S. Commc'ns Servs., Inc. v. Thomas*, 720 F.3d 1352, 1358 n. 6 (11th Cir. 2013). *But see Prowant*, 209 F. Supp. 3d at 1310 ("However, that is not to say *Bazzle* is worthless. *Au contraire*. It may have been a plurality decision, but it's the best we've got. Neither the Eleventh Circuit nor the Supreme Court has expressly rejected the proposition that class availability could be a [] procedural issue, and the plurality in *Bazzle* found it is. Of course, if class availability is a procedural issue, it was, as a matter of law, for the arbitrator to decide in this case."). As such, this Court is without any binding authority on

whether the availability of class arbitration is an arbitrability question for a court or a procedural question for an arbitrator.[1]

In any event, the arbitrator may make arbitrability determinations—such as whether the parties have agreed to submit a particular dispute to arbitration—when the parties "clearly and unmistakably" delegate such determinations to the arbitrator.[2] *AT & T Technologies*, 475 U.S. at 649; *see also Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability[]' . . . ."); *Communications Workers*, 475 U.S. at 649 ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."); *Terminix Int'l Co. LP v. Palmer Ranch Ltd. P'ship*, 432 F. 3d 1327, 1332-33 (11th Cir. 2005). Thus, the availability of class arbitration, even if it is a question of arbitrability, can be delegated to an arbitrator. The circuits to have considered the availability of class arbitration agree on this much. *See, e.g., Robinson*, 817 F.3d at 197 ("[I]f the parties agree to

---

[1] The Court nevertheless notes that several circuits have decided the issue, holding that the question of whether an arbitration agreement permits class-wide arbitration is *presumptively* a gateway matter reserved for judicial determination. *See Robinson*, 817 F.3d 193; *Dell Webb Communities, Inc. v. Carlson*, 817 F.3d 867 (4th Cir. 2016); *Opalinski v. Robert Half International Inc.*, 761 F.3d 326 (3d Cir. 2014); *Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594 (6th Cir. 2013). Also noteworthy is that at least one district court in this circuit has gone the other way. *See Prowant*, 209 F. Supp. 3d at 1310-12 (relying on the *Bazzle* plurality and the absence of any Supreme Court or Eleventh Circuit precedent rejecting *Bazzle*; holding that the plaintiff was not entitled, as a matter of law, to file its declaratory judgment action seeking a declaration that its dispute resolution policy did not permit the defendants to arbitrate their claims against the plaintiff as a class).

[2] Somewhat related to this narrow contract interpretation principle, the Supreme Court held in *Stolt-Nielsen* that a court may not presume that "parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings." 559 U.S. at 687 (footnote omitted). It must be noted, however, that the parties in *Stolt-Nielsen* "stipulated that there was 'no agreement' on [the] question" of whether they agreed to permit class arbitration." *Id.* Here, by contrast, the parties dispute whether the Agreement demonstrates an agreement to allow class arbitration. *See, e.g., Levy v. Lytx, Inc.*, 2017 WL 2797113, at *3 (S.D. Cal. June 28, 2017) ("Plaintiff argues that the Agreement incorporates class arbitration by reference to the AAA rules and references to 'all parties' and 'all claims.' . . . Because a failure to mention class arbitration in the arbitration clause itself does not necessarily equate with the 'silence' discussed in *Stolt-Nielsen*, the Court finds it necessary to determine whether this question of contract interpretation is one for the arbitrator.") (citations and internal quotation marks omitted).

submit the issue of arbitrability to the arbitrator, then the availability of class or collective arbitration is a question for the arbitrator instead of the court."); *Dell Webb*, 817 F.3d at 876 (observing that "those circuit courts to have considered the question have concluded that, unless the parties clearly and unmistakably provide otherwise, whether an arbitration agreement permits class arbitration is a question of arbitrability for the court") (citation and internal quotation marks omitted); *Opalinski*, 761 F.3d at 335-36 ("[T]he availability of class arbitration is a 'question of arbitrability' for a court to decide unless the parties unmistakably provide otherwise."); *Reed Elsevier*, 734 F.3d at 599 ("[T]he question whether an arbitration agreement permits classwide arbitration is a gateway matter . . . reserved for judicial determination unless the parties clearly and unmistakably provide otherwise.") (citation and internal quotation marks omitted). With that in mind, the Court turns to the Agreement to determine whether the parties clearly and unmistakably delegated to the arbitrator the question of whether the Agreement allows for class arbitration.[3]

In finding that the Agreement does establish the parties' clear and unmistakable delegation to the arbitrator the question of whether the Agreement allows for class arbitration, this Court finds most persuasive the approach taken by the Fifth Circuit in *Reed v. Florida Metropolitan University, Inc.*, 681 F.3d 630 (5th Cir. 2012), *abrogated in part on other grounds*, *Sutter*, 133 S. Ct. 2064. In *Reed*, the Fifth Circuit addressed whether the district court erred in allowing an arbitrator to determine whether the parties had agreed to class arbitration pursuant to their arbitration agreement, which explicitly adopted the AAA's "Commercial Rules." 681 F.3d at 634. The Fifth Circuit began its analysis by observing that the AAA's Commercial Rules "do

---

[3] The Court need not decide on a more general level whether the availability of class arbitration is presumptively a gateway question reserved for judicial determination, because ultimately, the Agreement reflects that the parties indeed delegated that question to the arbitrator. *See Reed v. Florida Metropolitan University, Inc.*, 681 F.3d 630, 633-36 (5th Cir. 2012) (doing the same), *abrogated in part on other grounds*, *Sutter*, 133 S. Ct. 2064.

not contain class arbitration procedures[.]" *Id.* Rather, the collective AAA Rules—which explicitly govern the Agreement in this case—include "various" rules governing specific actions (e.g., the AAA Commercial Rules) and "separate Supplementary Rules for Class Arbitration" (the "Supplementary Rules"), which were enacted after the Supreme Court's decision in *Bazzle*. *Reed*, 681 F.3d at 634. "By their plain terms, these Supplementary Rules apply 'to any dispute arising out of an agreement that provides for arbitration pursuant to *any* of the rules of the . . . AAA[] where a party submits a dispute to arbitration on behalf of or against a class or purported class, and shall supplement any other applicable AAA rules.'" *Id.* at 634-35 (quoting AAA Supp. R. 1(a)) (emphasis added). Observing that "[c]ommentators and AAA arbitral tribunals have consistently concluded that consent to any of the AAA's substantive rules also constitutes consent to the Supplementary Rules[,]" the Fifth Circuit concluded "that the parties' agreement to the AAA's Commercial Rules also constitutes consent to the Supplementary Rules."[4] *Id.* at 635.

The parties' consent to the Supplementary Rules proved dispositive for the Fifth Circuit, as "the substance" of the Supplementary Rules—in particular, Supplementary Rule 3—provides that "the *arbitrator* shall determine as a threshold matter … whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class …." *Id.* (quoting AAA Supp. R. 3) (emphasis in original). Finding that the parties' consent to the Supplementary Rules "therefore[] constitute[d] a clear agreement to allow the arbitrator to decide whether the party's [sic] agreement provide[d] for class arbitration[,]" the Fifth Circuit held that the district court correctly referred the class arbitration issue to the arbitrator. *Id.* at 635-36.

---

[4] To be sure, the "Reed parties' agreement did not reference the Supplementary Rules, and the parties did not stipulate that the Supplementary Rules would apply." *Langston v. Premier Directional Drilling, L.P.*, 203 F. Supp. 3d 777, 787 (S.D. Tex. 2016).

Here, like the parties in *Reed*, Spirit Airlines and Defendants have consented to the Supplementary Rules of the AAA by way of the Agreement's explicit adoption of "the rules of the American Arbitration Association."  ECF No. [1-2] at ¶ 9.5.  Supplementary Rule 3 speaks directly to the issue at hand by providing that "the arbitrator shall determine as a threshold matter . . . whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class . . . ."  AAA Suppl. R. 3.  Of course, there is one notable difference between the agreement in *Reed* and the Agreement in this case.  Unlike the *Reed* agreement's express provision that the AAA Commercial Rules would govern, the Agreement here provides that the AAA Rules will govern, but does not reference any subset of the AAA Rules.

In the Court's view, however, the omission of a specific subset of the AAA Rules is immaterial in this context.  The AAA Commercial Rules, as a prime example, do not themselves incorporate or even reference the Supplementary Rules.  *See generally Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 763 (3d Cir. 2016) (finding that the Supplementary Rules were not incorporated into the parties' agreements in part because even if the AAA Commercial Rules were incorporated therein—as was argued by the defendant—"[t]he Commercial Rules do not even refer to the Supplementary Rules").  As the Fifth Circuit recognized in *Reed*, the incorporation of the Supplementary Rules works in the opposite direction.  That is, the Supplementary Rules, through its own unequivocal language, apply to all AAA Rules (including the subsets); neither the AAA Rules generally nor the subsets need specifically incorporate the Supplementary Rules because the incorporation exists by default.  That default incorporation, as mentioned, is achieved by Supplemental Rule 1(a), which provides that the Supplementary Rules apply to "any dispute arising out of an agreement that provides for arbitration pursuant to *any* of the rules of the [AAA]."  AAA Suppl. R. 1(a) (emphasis added);

*see also Reed*, 681 F.3d at 635 (collecting cases and recognizing that, in addition to the AAA Commercial Rules, the AAA Wireless Industry Arbitration Rules and the AAA National Rules also incorporate the Supplementary Rules).[5]  If strictly adhered to, the language of Supplementary Rule 1(a) would dictate that its inapplicability requires at the very least an implicit recognition that the arbitration agreement at issue provides for arbitration pursuant to *none* of the rules of the AAA.  *See* AAA Suppl. R. 1(a).  But the inapplicability of Supplementary Rule 1(a) and an arbitration agreement's express provision that the AAA Rules govern, in this Court's (and others') view, make for an incompatible pairing.[6]  *See, e.g.,*

---

[5] It is worth noting that like *Reed* and cases cited to therein, courts in the Middle District of Florida have taken the same view that an arbitration agreement's incorporation of the AAA Commercial Rules necessarily incorporates the Supplementary Rules.  *See, e.g., Marriott Ownership Resorts, Inc. v. Sterman*, 2015 WL 11251946, at *4 (M.D. Fla. Jan. 16, 2015) ("Pursuant to the Master Deed, the parties have agreed to be bound by the AAA Commercial Arbitration Rules ("Commercial Rules"). In agreeing to be bound by the Commercial Rules, the parties also agreed to the Supplementary Rules of Class Arbitrations[.]") (citing AAA Suppl. R. 1(a), and *Reed*, 681 F.3d at 635); *Arcidiacono v. Limo, Inc.*, 2010 WL 4511083, at *1-2 (M.D. Fla. Nov. 2, 2010) (stating that the incorporation of the Commercial Rules also incorporates the Supplementary Rules and the question of class arbitration is for the arbitrator) (citing AAA Suppl. R. 1(a)).  Focusing on the AAA Commercial Rules, Spirit Airlines urges this Court to follow suit with this District's ruling in *JPay, Inc. v. Kobel*, 2016 WL 2853537 (S.D. Fla. May 16, 2016). The *JPay* Court rejected the argument that the agreement at issue's reference to the AAA Commercial Rules was sufficient to rebut the presumption that the Court is to decide arbitrability.  *Id.* at *3.  However, although the *JPay* agreement explicitly referenced the AAA Commercial Rules, there appears to have been no argument made that the AAA Commercial Rules (or the AAA Rules generally) incorporated the Supplementary Rules, as the issue was never addressed.  Indeed, nowhere in the *JPay* decision are the Supplementary Rules, much less Supplementary Rule 1(a), mentioned.  *Cf. Reed*, 681 F.3d at 635 n.5 (in holding that consent to the AAA's Commercial Rules constitutes consent to the Supplementary Rules, "not[ing] that the parties have never specifically disputed the applicability of the Supplementary Rules"). The distinction is far from insignificant, because as already discussed, the AAA Commercial Rules do not actually refer to the Supplementary Rules.  On that point, the *JPay* Court qualified its holding by noting the utter absence in that case of the kind of clear and unambiguous language specifically geared towards class arbitration that appears in the Supplementary Rules: "[A] reference to the AAA rules in an arbitration provision – *without any additional language regarding class arbitration* – is insufficient . . . ." 2016 WL 2853537, at *3 (emphasis added).  Here, by contrast, this Court must confront such language (and its applicability) front and center, as the Supplementary Rules are a focal point of contention between the parties.  For this reason, the Court views *JPay* as distinguishable from this case.

[6] Not to be understated, the parties agree here that at a general level the AAA Rules do govern the Agreement.  Taken to a logical extreme, in order to avoid rendering such governance a nullity while at the same time finding Supplementary Rule 1(a) inapplicable, the Court would have to essentially recognize that some particular rules or set of rules of the AAA Rules apply, but at the same time find that those rules

*Langston*, 203 F. Supp. 3d at 788-89 ("The court is not persuaded . . . that failure to reference a particular subset of the AAA Rules removes the agreement from the rule in <u>Reed</u>. . . . . The Supplementary Rules apply to any dispute arising out of an agreement that provides for arbitration pursuant to any of the rules of the [AAA] where a party submits a dispute to arbitration on behalf of or against a class or purported class, and shall supplement any other applicable AAA rules. *This language does not suggest that the parties must specify which rules apply in order to incorporate the Supplementary Rules.* Nor does it state that the primary rules must cross-reference the Supplementary Rules in order for the Supplementary Rules to be effective. Instead, the Supplementary Rules shall supplement any other applicable AAA rules.") (emphasis added) (footnotes and internal quotation marks omitted) (alteration in original); *Levy*, 2017 WL 2797113, at *1, *6 (finding dispositive an agreement's mere incorporation of "the rules of the American Arbitration Association" because "[a] reference to the AAA rules incorporates the Supplementary Rules") (internal citations omitted).[7]

A final point bears mention. One of the main authorities Spirit Airlines relies on is the Third Circuit's decision in *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746 (3d Cir. 2016), in which the arbitration agreement at issue used language nearly identical to that used in the Agreement in this case. Specifically, the Third Circuit examined an arbitration provision in oil and gas leases that provided as follows: "In the event of a disagreement between Lessor and Lessee concerning this Lease, performance thereunder, or damages caused by

---

or set of rules—whatever they may be—are somehow not the kind of AAA Rules contemplated by Supplementary Rule 1(a).

[7] At oral argument, the parties were at odds as to which specific subset or subsets of the AAA Rules should apply under the Agreement, with Spirit Airlines arguing that the "Consumer Rules" of the AAA "is really what [the parties] anticipated[.]" ECF No. [48] at 20. If accurate, Spirit Airlines' position only serves to bolster the Court's conclusion that the Supplementary Rules were incorporated into the parties' Agreement. *See* AAA Suppl. R. 1(a).

Lessee's operations, the resolution of all such disputes shall be determined by arbitration in accordance with the rules of the [AAA]." *Id.* at 748. Particularly relevant here, in holding that the leases did not clearly and unmistakably delegate the question of class arbitrability to the arbitrators, the Third Circuit emphasized, *inter alia*, that the leases did not explicitly reference the AAA Commercial Rules—which the defendant asserted were incorporated into the leases— nor did the AAA Commercial Rules in turn explicitly reference the Supplementary Rules. *Id.* at 762-63. The Third Circuit characterized the defendant's ultimate reliance on the Supplementary Rules as implicating "'a daisy-chain of cross-references'—going from the Leases themselves to 'the rules of the American Arbitration Association' to the Commercial Rules and, at last, to the Supplementary Rules.'" *Id.* at 762. The Third Circuit described what it viewed as a flaw in that reliance as follows:

> But, before we can even consider these Supplementary Rules, the "daisy-chain" takes us from the Leases to the otherwise unspecified "rules of the American Arbitration Association" to the Commercial Rules. The Commercial Rules do not even refer to the Supplementary Rules and are phrased in terms of basic procedural issues arising out of bilateral arbitration proceedings.

*Id.* at 763; *see also Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013) (concluding that the agreement, despite its incorporation of the AAA Commercial Rules, was "silent or ambiguous as to whether an arbitrator should determine the question of classwide arbitrability; and that is not enough to wrest that decision from the courts").[8]

---

[8] The Sixth Circuit's decision in *Reed Elsevier* warrants a closer review. In holding as it did, the Sixth Circuit rejected the argument that the underlying arbitration clause's reference to the AAA Commercial Rules was sufficient to incorporate the Supplementary Rules, explaining that "the Supplemental Rules expressly state that one should 'not consider the existence of these Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis." 734 F.3d at 599-600. Of course, that same observation was made by the Fifth Circuit in *Reed. See* 681 F.3d at 636 n.6 ("The parties' adoption of the AAA Commercial Rules and the Supplementary Rules cannot, however, be considered in deciding whether they agreed to arbitrate a class.") (citing AAA Suppl. R. 3). However, as this Court believes the Fifth Circuit correctly recognized, the precise issue at hand is who the decision maker as to class arbitration should be—not the secondary question of whether

As already discussed, this Court views an arbitration agreement's reference to the AAA Rules much differently than above. Aside from that, the final point to be made is that the Third Circuit in *Chesapeake* appeared to group the Eleventh Circuit's treatment of the AAA Rules with that of the Fifth Circuit—particularly in the *Reed* decision—and in doing so drew a distinction with its own treatment of the AAA Rules. *See* 809 F.3d at 765 n.7 (citing *S. Commc'ns*, 720 F.3d at 1358 n. 6, and *Reed*, 681 F.3d at 635 n.5). The Third Circuit reiterated that the proper inquiry of whether the leases at issue clearly and unmistakably delegated the question of class arbitrability to the arbitrators was "not merely whether the parties have somehow 'consented' to the Supplementary Rules." *Id.* at 765. Then, in a footnote, the Third Circuit observed that the Eleventh Circuit in *Southern Communications* had, like the Fifth Circuit in *Reed*, "refrained from deciding whether the availability of class arbitration is a question of arbitrability because the appellant 'gave the question of whether the contract allowed for class arbitration to the arbitrator through its *choice of rules* and by failing to dispute th[e] [a]rbitrator's jurisdiction to decide the threshold issue.'" *Id.* at 765 n.7 (quoting *S. Commc'ns*, 720 F.3d at 1358 n. 6) (emphasis added) (internal quotation marks omitted) (alteration in original). The Third Circuit appeared to view the Eleventh Circuit's treatment of the appellant's "choice of rules" as problematic, stating in relevant part that "[l]ike the Fifth Circuit, the Eleventh Circuit did not reference the 'onerous' burden that applies in the current context"—i.e., whether the agreement clearly and unmistakably delegated the specific question of class arbitrability to the arbitrator. *Id.* at 754, 765 n.7.

The "choice of rules" that the Third Circuit was referring to was the AAA Wireless Industry Arbitration Rules. *Id.* Importantly, like the AAA Commercial Rules, the AAA

---

class arbitration is indeed available (regardless of who is to decide). *See id.* at 636; *see also Langston*, 203 F. Supp. 3d at 782 n.23 ("[The defendant] may be right that the agreement does not allow class or collective arbitration, but that is not the issue before the court. The issue is who decides if the arbitration agreement permits class or collective procedures.") (alteration in original) (citation omitted).

Wireless Industry Arbitration Rules do not explicitly reference the Supplementary Rules.[9] Nonetheless, the Eleventh Circuit in *Southern Communications* appeared to tacitly recognize that the AAA Wireless Industry Arbitration Rules necessarily incorporate the Supplementary Rules. More specifically, the issue in *Southern Communications*, somewhat related to but different than the issue here, was whether an arbitrator's issuance of two arbitration awards—one of which construed the applicable arbitration clause as allowing for class arbitration—was beyond the scope of the arbitrator's powers under § 10(a)(4) of the FAA. 720 F.3d at 1354. In reviewing the arbitration awards, the Eleventh Circuit observed that the arbitrator had concluded that although the underlying contract was silent as to class actions, "AAA Supplementary Rule 3[] [] was incorporated by reference into the contract *by the parties' choice, stated in the arbitration clause,* to 'conduct the arbitration … pursuant to applicable *Wireless Industry Arbitration Rules of the American Arbitration Association*.'" *Id.* at 1359 (emphasis added). The Eleventh Circuit's tacit approval of the arbitrator's conclusion that the AAA Wireless Industry Arbitration Rules necessarily incorporated the Supplementary Rules is illuminated in light of the standard of review that governed the decision: so long as a reviewing court finds that the arbitrator even arguably interpreted the parties' contract, the court can only proceed to a further analysis as to whether the arbitrator somehow erred in that interpretation "in the rare instance where a court finds that a contract 'lack[s] *any* contractual basis for ordering class procedures[.]'"[10] *Id.* (quoting *Sutter*, 133 S. Ct. 2069) (emphasis in original). Pointing to the arbitrator's "recounting

---

[9] The Court takes judicial notice of the AAA Wireless Industry Arbitration Rules. *See* AAA Wireless Industry Arbitration Rules, *available at* https://www.adr.org/sites/default/files/AAA_Wireless_Rules%20%283%29.pdf.

[10] The further analysis to be conducted in that context is an examination into "whether the arbitrator 'identified and applied a rule of decision derived from the FAA or other applicable body of law or, alternatively, merely imposed its own policy choice and thus exceeded its powers[.]" *Id.* (quoting *Stolt-Nielsen*, 130 S. Ct. at 1770) (internal quotation marks omitted) (alterations in original).

the text of the contract's arbitration clause" (including the arbitration clause's adoption of the AAA Wireless Industry Rules), the Eleventh Circuit held that the arbitrator arguably interpreted the contract. *Id.* at 1359. Significantly, the Eleventh Circuit ended its inquiry there. *See id.* at 1359-60 ("The arbitrator's construction holds, however good, bad, or ugly."). And by electing not to proceed with any further analysis, the Eleventh Circuit necessarily concluded that the underlying contract and its adoption of the AAA Wireless Industry Rules did *not* lack any contractual basis for ordering class procedures. *See id.* at 1359; *see also generally Terminix*, 432 F.3d at 1332-33 (11th Cir. 2005) (collecting cases and finding that the parties' incorporation of the AAA Commercial Rules into their agreement evinced a clear and unmistakable agreement that the arbitrator should decide the arbitrable question of whether the agreement's arbitration clause was valid); *id.* at 1333 ("when ... parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator") (quoting *Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205, 208 (2d Cir. 2005)). It would seem to follow, then, that this Court is left with but one conclusion: that the Agreement's incorporation of the AAA Rules necessarily incorporated the Supplementary Rules.

The Court finds highly persuasive the Fifth Circuit's view in *Reed* that inclusion of any of the AAA Rules in an arbitration agreement necessarily incorporates the Supplementary Rules, which in turn specifically delegate the class arbitrability issue to the arbitrator. *See* AAA Suppl. R. 1(a); AAA Suppl. R. 3. Furthermore, as alluded to by the Third Circuit in *Chesapeake*, the Court believes that the Eleventh Circuit, if squarely confronted with the issue, would follow suit with the Fifth Circuit's *Reed* decision—to the extent that it has not already done so. Accordingly, the Court finds that the parties Agreement, through its adoption of the AAA Rules,

clearly and unmistakably delegated to the arbitrator the question of whether the Agreement allows for class arbitration. And because "the parties have contracted around the default rule" that the Court rule on the class arbitrability issue, "it is[] [] unnecessary for [the Court] to reach" the secondary issue of whether Defendants may, pursuant to the Agreement, pursue their claims against Spirit Airlines through class arbitration. *Terminix*, 432 F.3d at 1333. Indeed, it would be improper for the Court to do so.

## III.     CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1.  Defendants' Motion to Dismiss, **ECF No. [25]**, is **GRANTED**.

2.  Plaintiff's Motion for Preliminary Injunction to Stay Class Arbitration Proceedings, **ECF No. [8]**, is **DENIED as moot**.

3.  The Clerk is instructed to **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 18th day of September, 2017.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:  Counsel of Record